THE J. R. WATKINS COMPANY v. MARTIN.

5-1685                                          318 S. W. 2d 591

Opinion delivered December 8, 1958.

*A. J. Russell* and *M. D. Anglin,* for appellant.

*John H. Shouse,* for appellee.

ED. F. McFADDIN, Associate Justice.    This appeal stems from the efforts of the appellant to recover on a surety agreement.    The appellant—The J. R. Watkins Company (hereinafter called "Watkins")—is a corporation engaged in selling merchandise in wholesale quantities to individuals who resell to the retail trade.

On June 17, 1954 Watkins entered into a written contract with William Albert Martin (hereinafter called "Martin"), agreeing to sell to him merchandise in wholesale quantities, under the provisions of their contract.[1] To guarantee Martin's payments to Watkins under the contract, Tom Martin, along with the appellees, Bailey Hall, V. E. Smith, Roy Bell, and Clyde Deakins, signed a surety agreement with Watkins, which agreement was attached to the Martin contract, and read in part:

"In consideration of the execution of the foregoing agreement by The J. R. Watkins Company, which we . . . hereby agree and assent to, and its promise to sell, and the sale and delivery by it, to the Purchaser, as vendee, of goods and other articles, as therein provided, we, the undersigned sureties, . . . jointly, severally and unconditionally promise, agree and guarantee to pay for said goods and other articles, and the prepaid transportation charges thereon, at the time and place, and in the manner in said agreement provided . . ."

Pursuant to the contract, Martin received merchandise from Watkins at various times and in various amounts. He did not pay for the merchandise; and he seems to have departed from the locality and was never served with summons in this case. His unpaid balance was $1,458.92 on April 18, 1955, when Watkins notified each of the appellees:

---

[1] Some of the contractual provisions were:

1. The contract continued until April 1, 1955 if Martin fulfilled all terms, but ". . . either of the parties hereto may terminate this agreement at any time, if desired, by giving the other party notice thereof in writing by mail."

2. "The purchaser further agrees to pay the Company its current wholesale prices for the goods and other articles sold to him, as herein provided . . ."

3. "The purchaser may, within thirty days after the expiration or termination of this agreement, return, by prepaid freight, to the Company, at Winona, Minnesota, Memphis, Tennessee, Newark, New Jersey, or Oakland, California, in as good condition as when delivered to him at point of shipment, any goods purchased by him from the Company, which he may then have on hand; and the Company agrees to repurchase such goods, in the units and combinations purchased, if in such condition when received by it, and pay or credit the Purchaser therefor at the invoiced prices or at the Company's prevailing wholesale prices whichever shall be lower . . ."

"In Re: Your surety for Mr. William Albert Martin. This is to notify you formally that the contract of the above for whom you are surety has been terminated, and in accordance with the provisions of the contract any balance owing is immediately due and payable. We wish to advise you that under the terms of the contract, unsold goods are returnable for credit, charges prepaid—credit will be allowed on condition of goods as received by us. If there is any information you desire or cooperation, please let us hear from you promptly."

Appellees neither made payment nor returned merchandise; and on May 31, 1956 Watkins filed the present action, alleging the facts as above stated, all of which were established at the trial. In addition to a general denial, the appellees claimed that Martin had on hand merchandise which should have been returned to Watkins and which would have extinguished the account.

At the trial, the appellees admitted signing the contract, did not deny the correctness of the account, and admitted receiving the letters from Watkins dated April 18, 1958; but the appellees contented themselves with testifying: (a) that they went to Martin's house and saw through the window several truck loads of merchandise, although no one ever made any further examination as to the contents or condition of the merchandise; (b) that they wrote Watkins offering to return the merchandise and pay freight, but never received any reply to the letter; and (c) because they did not receive a reply to the letter, no merchandise was ever returned. These matters were claimed to be substantial compliance with the provisions of the contract as to the return of the merchandise. At the conclusion of the evidence, Watkins moved for an instructed verdict for the plaintiff, which was refused. The jury rendered a verdict for the defendant and this appeal ensued.

I. *Instructed Verdict.* We hold that the Trial Court should have directed a verdict for Watkins. The fact that the appellees received no detailed instructions from Watkins as to the method of returning the mer-

chandise was no defense, because the contract gave the appellees the right to return the merchandise if they exercised the right within the time and in the manner stated in the contract, all of which they entirely failed to do. The appellees did not show: (1) that they tendered a return of the merchandise within the time fixed by the contract; (2) that the merchandise in Martin's house was of the qualifications that could be returned; or (3) that the merchandise in Martin's house had any determined value. According to the uncontradicted evidence, the defendants owed Watkins $1,458.92, together with interest, and the Trial Court should have directed a verdict for Watkins for said amount, since the appellees did not show that they had complied with the contract in regard to the return of merchandise.

II. *Procedural Matter On Appeal.* In this Court the appellees have filed a motion to dismiss the appeal: claiming that the appellant has failed to comply with a portion of Sec. 9 of Act 555 of 1953 (as now found in Sec. 27-2127.3 Cumulative Supplement to Ark. Stats.) The portion of the section relied on by the appellees reads:

"If there be designated for inclusion any evidence or proceedings at the trial or hearing which was stenographically reported, the appellant shall file, at the time of filing his designation or within a time to be fixed by the Court, a copy of the reporter's transcript of the evidence or proceedings included in his designation. The said transcript shall be filed with the designation unless the appellant shows to the satisfaction of the Court the impossibility or impracticability of furnishing the transcript at the time of the filing of the designation of the record."

The appellees urge that when the appellant furnished the designation of the record and the points to be relied on, the appellant failed—at that time—to furnish the stenographer's transcribed notes of the testimony taken *ore tenus.* The record reflects that the judgment was entered on April 5, 1958; that the notice

of appeal and the designation of points were filed on April 9, 1958; that the transcribed testimony was certified by the Court Reporter on April 16, 1958; and that it was filed on April 23, 1958.

When the judgment was filed on April 5, 1958 the appellant had thirty days within which to file the notice of appeal; and was required to file the designation of points promptly thereafter. (See Sec. 2 of Act 555, as found in § 27-2106.1 Cumulative Supplement to Ark. Stats.) The notice and designation were filed in apt time. The statute says: ". . . failure of the appellant . . . to take any of the further steps to secure the review shall not affect the validity of the appeal, . . . but shall be ground only for such action as the appellate court deems appropriate, which may include the dismissal of the appeal . . ." Section 20 of said Act 555 (as now found in § 27-2127.1 Cumulative Supplement to Ark. Stats.) says that the record on appeal shall be filed with the appellate court and the appeal docketed within 90 days from the date of the notice of the filing of the appeal unless an extension be granted, as provided by law. The record was filed in this Court within the 90-day period.

When we take into consideration the fact which we know—that it is only in the rarest of instances that a court reporter gets the testimony transcribed within four days after the trial—we think it would be putting the letter above the spirit to say that the transcribed testimony *must* be filed in all cases at the time the notice of appeal and the designation of the record are given. We, therefore, indulge a presumption that the Trial Court granted additional time for the filing of the transcribed testimony; and this presumption exists because appellees did not claim and establish either: (1) that they asked the lower Court to shorten the time for filing the transcribed testimony; or (2) that the appellees have been hurt by failure of earlier filing of the transcribed testimony. We exercise the discretion accorded us by Sec. 2 of the Act 555 and deny the motion to dismiss the appeal.

The judgment is reversed and the cause is remanded, with directions to enter a judgment for The J. R. Watkins Company for $1,458.92, together with interest from April 18, 1955 until paid, and together with all costs.

Justice WILLIAM J. SMITH not participating.